IN THE DISTRICT COURT OF THE UNITED STATES OF AMERICA
SOUTHERN DISTRICT OF FLORIDA - MIAMI  DIVISION

DIANE TEMPLETON,

      Plaintiff,

v.

ANN FIERRO, f/k/a
ANN THEIS, an Individual and
A. THEIS, INC.,
THE OMEGA CONSULTING GROUP, INC.,
and OMEGACAL CONSULTING, INC.
and  OMEGA DATA SOLUTIONS, INC.,
 Florida Corporations,

      Defendants.

_____/

CIVIL DIVISION

CASE NO. 00-7412 CIV -GOLD

Magistrate: Simonton

Fla. Bar No. 281697

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF HER PENDING MOTIONS IN STATE COURT ON REMOVAL

Pursuant to S.D. Fla. LR. 7.2, Plaintiff files this, her Memorandum in support of the

pending motions that need to be resolved since the Petition for Removal filed by Defendants.

1. *Introduction:*

Plaintiff, DIANE TEMPLETON (hereafter "DIANE"), is one of two shareholders and one of

two directors of defendant THE OMEGA CONSULTING GROUP, INC. (hereafter "

CONSULTING").  Defendant ANN FIERRO (hereafter "FIERRO") is the other

shareholder/director.  The federal claim which prompted defendant's removal petition is a claim

for retaliation under Title VII of the Civil Rights Act of 1964, as amended. Thus the court's

jurisdiction is grounded upon a federal question. 28 U.S.C. §1331.

The court also has discretionary supplemental jurisdiction over the state claims which

defendants have not yet answered.  The state claims involve fraud against Fierro individually,

shareholder derivative actions for breaches of her statutory duties of care, good faith and loyalty

and duty to act in the best interests of the corporations, derivative embezzlement action against Fierro for embezzlements committed against the corporations, unjust enrichment as a derivative claim, individual claims for breach of contract,   individual action to have a receiver appointed and to dissolve the corporations for continuing waste, as well as a Florida Civil Rights action for retaliation resulting in an illegal discharge by CONSULTING acting as the nominee of FIERRO.

The other corporations are joined as nominees of either FIERRO or CONSULTING and are the recipients of benefits and unjust enrichment siphoned off the CONSULTING company by FIERRO.

The dispute arose as a result of FIERRO stealing money from CONSULTING through a scheme of unauthorized payments and raises to FIERRO's husband  which, when discovered by DIANE, resulted in DIANE protesting the same orally at first, then by letter, and then at the only board meeting that was ever formally called.  DIANE called a board meeting and a shareholder's meeting and was improperly excluded from the board meeting by FIERRO who fraudulently took the position that FIERRO was the only director (which is the subject matter of one of the many frauds which FIERRO has and is still perpetrating upon DIANE and the court). Subsequently, DIANE discovered other misappropriations committed by FIERRO consisting of other unjustified and unequal compensation payments and illegal payments.  Thus DIANE brought the above mentioned actions, seeking in the state court action the appointment of a receiver or alternatively the dissolution of the company to which the defendant FIERRO countered with an irrevocable election to purchase under Florida law.

2. *__Defendant's Outstanding Production Obligations:__*

The state court ordered defendants to allow inspection of all corporation documents in light of DIANE'S 50% ownership and Defendant FIERRO's 6/14/00 purchase election to DIANE.

Defendants thwarted the initial inspection. Upon a motion for contempt, DIANE was able to obtain some documentation for valuation purposes, and has also discovered that FIERRO is wasting the companies' assets through misappropriation and mismanagement while implementing a plan of asset protection utilizing fraudulent conveyances apparently through the advice of her attorney BECKER & POLIAKOFF.  Meanwhile, as FIERRO continues to delay billings and to embezzle from the corporations and to disburse moneys to her nominees and offshore trusts, her attorneys (which have been paid by CONSULTING) have asserted attorney client privilege as to communications to FIERRO or by FIERRO (to a third party)  left on the corporate hard drive and have redacted materials relating to the formation of at least two offshore trusts for which FIERRO initially engaged BECKER & POLIAKOFF apparently as a part of a scheme to grab all the corporate assets.

Thus DIANE filed the below motions, all of which were pending and were noticed for hearing for September 28, 2000 in the State Court action, which hearing was delayed again by the eleventh hour removal petition filed by defendants.

3. ***Pending Plaintiff's Motions:***

The pending Plaintiff's motions are:

a.  Plaintiff's Exceptions to Special Masters Report

b.  Plaintiff's Motions: For Order of Civil Contempt, For Order Disqualifying Defendant's Counsel, and Order Striking Purchase Election, and Dissolving Corporations.

4. ***Pending Defense Motions:***

a.  Defendant's claim of privilege as to e-mail communications

b.  Defendants Motion for enlargement of time to respond third amended complaint

5.  Taking each of Plaintiff's issues[1] in sequence the following analysis is proffered:

a.  *Plaintiff's Exceptions to Special Masters Report*.  The exceptions speak for themselves. The Special Master was appointed only to oversee the inspection which was not attended by Plaintiff's attorney, and therefore, the Special Master was without authority to make any recommendations under Florida Law.

b.  *Plaintiff's Motions: For Order of Civil Contempt, For Order Disqualifying Defendant's Counsel, and Order Striking Purchase Election, and Dissolving Corporations.*

    i.  Motion for Contempt:

        (1) **The Redactions relating to the Offshore Trusts:**  In her Motion for Contempt, Plaintiff seeks disclosure of the redactions contained in Exhibit A, which name the various offshore trusts created by FIERRO.  The Exhibit is attached to the Motion.  Plaintiff also seeks disclosure of the e-mail communications for which Defendant filed a Privilege Log (attached as exhibit B to the motion). No privilege or other reason has been submitted for the redactions and, accordingly, the same should be disclosed forthwith under the disclosure order signed by the Fla. Circuit Court Judge.

        (2) **Privilege, waiver, fiduciary duty, good cause and the withheld e-mails:**  As to the e-mail communications, none of the same are privileged for the following reasons:

            (a) ***Assuming, arguendo, the privilege belongs to FIERRO, the individual, it has been waived by disclosure to the corporation and others.***

                (i) **Waiver:**  The attorney-client privilege belongs to the client who also has the power to waive it by disclosure. §90.507 Fla. Stat. (1999) establishes when disclosure operates as a waiver of privilege:

---

[1] Defendant's motions are not addressed except when necessary in the context of Plaintiff's pending motions.

*Plaintiff's Memo, Templeton v. Fierro et. al. Case No. 00-7412 CIV - Gold, Page 4 of 19*

> **A person who has a privilege against the disclosure of a confidential matter or communication waives the privilege if the person, or the person's predecessor while holder of the privilege, voluntarily discloses or makes the communication when he or she does not have a reasonable expectation of privacy, or consents to disclosure of, any significant part of the matter or communication. This section is not applicable when the disclosure is itself a privileged communication.**

Under Federal law, actions inconsistent with the preservation of the privilege will operate as a waiver. "[I]t is not asking too much to insist that if a client wishes to preserve the privilege ... he must take some affirmative action to preserve confidentiality." *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973), *cert. denied*, 414 U.S. 867 (1973).

Here, defendant FIERRO stored the unencrypted e-mails on the Corporate hard-drive where anyone had access. Plaintiff submits that her failure to safeguard the confidentiality of the e-mails by leaving the same on the corporate hard-drive constitutes a waiver of the privilege inasmuch as the corporation owns the stored media.

Alternatively, FIERRO does not have standing to assert a privilege over materials that do not belong to her. It would be the corporation who would have such standing since it owns the materials. Since the communications involve only the FIERRO/attorney privilege, the corporation has no standing to assert a privilege that it does not own.

Lastly, the act of leaving the e-mails on the corporate harddrive constitutes a disclosure to the third party corporation[2], which eviscerates any argument of privilege. *Hamilton v. Hamilton*, 409 So. 2d 1111 9Fla. 4th DCA 1982). Although a meritless argument may be asserted that an inadvertent disclosure by an attorney would not abrogate the privilege, the fact that the client made the disclosure would constitute a waiver.

---

[2] It must be noted that the last e-mail for which privilege is claimed was also transmitted to a third party who is not an attorney, which destroys the privilege.

**(b)** *Assuming, arguendo, the privilege belongs to the corporation, it should be overruled due to the fiduciary relationship between the parties, the nature of the action between the parties, and the showing of good cause, under federal law.*

§90.502 Fla. Stat. (2000)[3] establishes the Attorney-Client Privilege in Florida and is incorporated into the Federal Rules under FRE §501.   However, in Federal actions involving Federal question jurisdiction (as opposed to diversity cases):

**"[S]uch actions are predicated on federal law, embodying federal policies. Enforcement of those policies demands that the federal courts apply their own rules of privilege where substantial state interests are not infringed.." *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir. 1970), *cert. denied* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971).**

The law in the 11th Circuit[4] dictates that the privilege is qualified as it relates to Corporations, and will not be sustained upon a showing of good cause when there exists any type of a fiduciary relationship between the management of a corporation and the opposing party, which is presumed in the context of a shareholder derivative action. *Garner v. Wolfinbarger*, *supra.* According to *Garner, supra*, at 1100,  four fundamental conditions must be recognized prior to the establishment of an attorney-client privilege. Absence of any one of the conditions is fatal to the privilege and  will not override the general duty to disclose unless all four of the following conditions are satisfied:

(1) The communications must originate in a confidence that they will not be disclosed.
(2) This element of confidentiality must be essential to the full and satisfactory maintenance

---

[3] Counsel must point out that there exists precedent under Florida case law which vests all questions of assertion or waiver of the attorney-client privilege in the board of directors. *Tail of the Pup, Inc. v. Webb*, 528 So. 2d 506 (Fla. 2d DCA, 1988).  However, the facts in that case distinguishes it from the instant situation where a 50% shareholder/co-director has been forcibly removed from the operations of the company, and the remaining director is simply operating *ulta-vires*.

[4] Decisions of the 5th Circuit preceding formation of the 11th Circuit became binding precedent in the 11th Circuit, *Bonner v. Prichard,* 661 F.2d 1206 (11th Cir.1981).

of the relation between the parties.

(3) The relation must be one which in the opinion of the community ought to be sedulously fostered.

(4) The injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation.

The problem with the privilege asserted by Defendant FIERRO, is that the 4th criteria cannot be met in the instant situation.  The assertion of privilege operates to work against the other 50% owner of the company. By asserting the privilege, one-half of the corporation is operating against the owner of the other half, and it is "difficult to rationally defend the assertion of the privilege if all, or substantially all, stockholders desire to inquire into the attorney's communications with corporate representatives." *Cox, et.al v. Administrator United States Steel & Carneigie, et. al.*, 17 F.3d 1386 (11th Cir. 1994), at 1416 *quoting Garner*, *supra*, at 1101. As such, if the privilege is asserted, logically 50% of the corporation is denied access to its own privileged information.[5] Accordingly, an exception to any privilege raised should be created because it prevents corporate interests from suffering at the hands of those who have harmed the corporation.

Although management is responsible for asserting or waiving an attorney-client privilege, management of a corporation owes a fiduciary duty to the corporation, which derivatively, is the corporate shareholders. *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343 (1985); *Cox, et.al v. Administrator United States Steel & Carneigie, et. al.*, *supra.*; *Garner*, *supra.*; *Quintel Corp., N.V. v. Citibank, N.A.*, 567 F. Supp 1357 (S.D.N.Y 1983).

    (c) ***Good Cause:***

In the context of a shareholder derivative action where the shareholders allege a breach of trust or wrongdoing against the management, *Garner* identified at least 9 factors which, *inter*

---

[5] See John William Gergacz, *Attorney-Corporate Client Privilege* (2d. Ed. 1990), ¶¶ 6.03, at 6-16 n.54.

*Plaintiff's Memo, Templeton v. Fierro et. al. Case No. 00-7412 CIV - Gold, Page 7 of 19*

*alia*, any of which would constitute good cause for over-ruling a claim of privilege:

    (i)     the number of shareholders and the percentage of stock they represent;

    (ii)    the bona fides of the shareholders;

    (iii)   the nature of the shareholders' claim and whether it is obviously colorable;

    (iv)   the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources;

    (v)    whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality;

    (vi)   whether the communication related to past or to prospective actions;

    (vii)  whether the communication is of advice concerning the litigation itself;

    (viii) the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing;

    (ix)   the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons. *Garner*, at 1104.

Because the attorney-client privilege "must be assessed on a case to case basis, depending on the particular facts of each case" *Baird v. Koerner*, 279 F.2d 623, 631 (9th Cir. 1960), any of the above nine factors, independently or collectively, would constitute good cause to overrule the assertion of an attorney-client privilege in favor of a complaining shareholder, because to do otherwise would be against the "fundamental principle that the public has the right to every man's evidence", *Garner* at 1100.  As such, the assertion of a privilege is distinctly exceptional, and must be "strictly confined within the narrowest possible limits, consistent with the logic of its principle." *id*. at 1101.

In light of the nature of the instant lawsuit which seeks derivative relief against FIERRO for embezzlement and recoupment for unjust enrichment and misappropriation, as well as a dissolution for waste and mismanagement and damages for retaliation for asserting non-compliance for a civil rights violation, together with the attached exhibits showing a significant wasting of corporate assets by FIERRO and patent manipulation of the books to delay billings or

intercept receipts earmarked for the corporation (See Plaintiff's Affidavit with Attached

exhibits), Plaintiff submits that she has shown good cause to overrule the assertion of any

corporate privilege.  Coupled this with the fact that Plaintiff maintains that she is and always has

been a director[6], but has been deprived of that function by FIERRO , thus rendering all of

FIERRO's actions *ulta-vires*, clearly establishes a prima facie case for dissolution due to waste,

or appointment of a receiver, especially since nothing appears to work to cause FIERRO to

operate in the best interests of the corporations.  In effect, FIERRO is using corporate assets as

her personal piggy bank to fund offshore trusts, and pay her personal expenses, thus creating a

tremendous potential tax liability for DIANE caused by FIERRO'S malfeasance.  Thus, good

cause has been demonstrated.

    ii.  ***Plaintiff's Motion for Order disqualifying Defendants' counsel:***

**The Representation by the law firm of BECKER & POLIAKOFF of FIERRO's interests is in direct conflict with the interests of the CORPORATIONS and probably in direct conflict with DIANE due to an appearance of impropriety and unfair advantage.**

Rule 4-1.7, Rules of Professional conduct provides in pertinent part:

**(a) Representing Adverse Interests.  A lawyer shall not represent a client if the representation of that client will be directly adverse to the interests of another client, unless:**

---

[6] DIANE's sworn allegations of directorship in the complaint remain unrebutted. Additionally, FIERRO has apparently represented to the world that DIANE is a director of the corporation CONSULTING from where all funds are derived by creating a business card denominating her as such.  Additionally, FIERRO also apparently gave the impression that DIANE is FIERRO's partner as demonstrated by the statement contained in FIERRO's attorney's engagement letter which states on page 2 paragraph 3: "The other fifty (50% ) percent of Omega Nevis will be owned by your Partner, Diane Templeton ("Diane")."  DIANE is either a party or a third party beneficiary of the asset protection scheme by evidenced by FIERRO's attorney's engagement.  It also states at paragraph 6 that "Diane will enter into certain agreements concerning the operation, control and distribution of income from Omega Nevis" and further goes on describing a scheme where FIERRO will seize control of day to day operations and implement disproportionate distributions of income to FIERRO to the prejudice of DIANE.

(1) the lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client;  and

(2) each client consents after consultation.

(b) Duty to Avoid Limitation on Independent Professional Judgment.  A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person or by the lawyer's own interest, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation.

(c) Explanation to Clients.  When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

The fact that FIERRO's attorneys have asserted the attorney client privilege over e-mails belonging to the corporation in violation of two court orders and DIANE's financial interest provides stark evidence of the conflict which permeates the relationship between BECKER & POLIAKOFF, FIERRO, and the CORPORATIONS.  As a matter of law, FIERRO owes a fiduciary duty to DIANE as a director of CONSULTING. _Garner_, _supra._  The fact that DIANE sought to have the corporation run as an equal venture and for the corporation to conduct itself in compliance with Federal Civil Rights laws and Federal tax laws and that BECKER & POLIAKOFF are aware of her "partner" status is undisputed.  The fact that BECKER & POLIAKOFF are in actual and constructive possession of all corporate financial details which directly influence DIANE's personal tax situation and have begun the implementation of a scheme to require unequal distributions of corporate profits to the prejudice of DIANE is likewise undisputed and is in conflict with the fiduciary nature of the relationship between FIERRO and DIANE, if not directly against the interests of DIANE. The fact that BECKER & POLIAKOFF was engaged to prepare articles of merger for the "shareholders", and to prepare a Foreign Irrevocalbe Life Insurance Trust, as well as assignments that would have to be approved

by the shareholders indicates a triple representation of FIERRO, the CORPORATIONS, and

DIANE. The representation of FIERRO in her personal asset protection scheme and to cover up

the malfeasances of FIERRO in shutting out DIANE from effective participation in the board

meeting is undisputed and in conflict with the CORPORATIONS' interests and DIANE's

interests. The fact that BECKER & POLIAKOFF knew that FIERRO was DIANE's "partner"

and had business cards made up showing DIANE to be a director of CONSULTING cannot be

disputed. Thus, the continued representation by BECKER & POLIAKOFF of FIERRO is

directly adverse to DIANE's interests, and is in conflict with the CONSULTING company's

financial interests and FIERRO'S fiduciary duties owed to DIANE. If FIERRO has embezzled

monies from the CONSULTING company, the CONSULTING company is entitled to

recoupment from FIERRO, both of which are represented by BECKER & POLIAKOFF. Such

conflict is patent, and even if not directly in conflict, it has the appearance of impropriety, and is

prohibited as a matter of law which requires the law firm's withdrawal from the representation of

either in this lawsuit.

There has been no effective waiver by the CORPORATIONS or DIANE of such conflict

because the board, acting without the participation of DIANE, cannot effectively exercise any

decision; such actions would be *ultra vires*.

I  LAW

A.  Jurisdiction.  In her Motion and evidence in support of her Motion to disqualify

Opposing counsel, certain ethical considerations involving the conduct of the opposing counsel

prior to the movant's retention of legal counsel of her own are raised.  Documents and

information was given by the Movant's partner to the Opposing counsel regarding the Movant's

financial condition when the Movant was not represented by counsel.  During that same time

*Plaintiff's Memo, Templeton v. Fierro et. al. Case No. 00-7412 CIV - Gold, Page 11 of 19*

period the Opposing attorney did not advise the Movant he was not representing both parties. Instead, the tone and tenor of Mr.Cahan's communications to FIERRO indicate BECKER & POLIAKOFF acted as the attorney in formulating "agreements" that DIANE was to sign thereby posing as a representative of both parties.

The Movant's counsel realizes the Court may question the propriety of the Movant filing her Motion inasmuch as said Motion could be construed as a disciplinary matter within the exclusive jurisdiction of the Florida Bar. Case law indicates, however, that a trial court has the right and authority to control conduct and procedure in its court including the actions of counsel.

In *Pantori v. Stephenson*, 384 So.2d 1357 (Fla. 5th DCA 1980), the Fifth District Court of Appeals stated at page 1359:

> **The basic purpose of the trial court is to afford litigants an impartial forum in which their complaints and defenses may be presented, heard and decided with fairness. This purpose transcends the rights of attorneys to be controlled in their conduct by the Supreme Court. It is unquestioned that a trial court may control an attorney for contemptuous conduct.... It may deny an attorney leave to withdraw from a case .... Therefore, a trial court may decide, after consideration of a motion alleging sufficient facts which, if true, would warrant removal of opposing counsel, that removal is mandated.** (Citations omitted).

In Pantori, supra, the petitioner alleged that respondent's counsel had formerly represented it in matters involving the same subject matter in the case before the trial court. The petitioner alleged the respondent's counsel had access to confidential information useful to the respondent and detrimental to the petitioner as a result of this prior relationship. The trial court declined to hear the motion because it believed it did not have jurisdiction to disqualify an attorney from representing a client. Reversing the trial court's order, the Fifth District Court of Appeals ruled the trial court should have conducted a hearing on the merits of the motion and removed

respondent's attorney if it determined a continued representation by the Respondent's would breach the petitioner's confidences.  The Court stated, at page 1359:

> **The purpose of the hearing is not to determine whether there has been a breach of the Code of Professional Responsibility for which the attorney may be disciplined but whether, because of such breach, one party has an <u>unfair advantage</u> over the other which can only be eliminated by removing the attorney.** (Emphasis added).

The procedure and jurisdictional issues raised in Pantori have been followed in the Fourth District Court of Appeals.  *Wrobleski v. Wrobleski*, 458 So.2d 412 (Fla. 4th DCA 1984) holds that a "refusal to consider the merits of that motion is a departure from the essential requirements of the law."

B. <u>Procedure</u>.  What procedure is followed when an issue regarding disqualification of a party's attorney is presented was addressed in *Trautman v. General Motors*, 426 So.2d 1183 (Fla. 5th DCA 1983) as well as *Dawson v. Bram*, 491 So.2d 1275 (Fla. 2nd DCA 1986).  Generally, the petitioner must raise the issue by proper motion and file affidavits and evidence supporting the motion.  Thereafter, the opposing party has the right to file affidavits in rebuttal. If the movant's affidavit and evidence supports an inference that one party did acquire an unfair advantage over the other then the trial court must grant the motion for disqualification unless the opposing party presents affidavits in rebuttal.  If both parties file conflicting affidavits then the Court must hold an evidentiary hearing in Order to determine whether disqualification is appropriate.

In *Trautman*, the attorney for the plaintiff previously worked in the defendant's legal offices and had access to internal information regarding product liabilities actions.  Later he left his employment with General Motors and represented the plaintiff as a private attorney in a design deficiency case against General Motors.  The affidavit filed by General Motors, although lacking

in factual specificity, readily inferred a substantial relationship between the expertise confided in the plaintiff's counsel while working for General Motors and the expertise at issue in the Trautman case.  Standing alone, the DCA ruled, General Motors had presented an adequate basis for disqualification of plaintiff's counsel.  The Court also ruled plaintiff's counsel's failure to provide rebutting evidence or affidavit eliminated the necessity of a hearing on the merits to disqualify.

In _Dawson v. Bram_, 491 So.2d 1275 (Fla. 2nd DCA 1986) the petitioners were former members of a condominium association's board of directors.  The respondent was a member of the current board of directors.  The respondent, in an  unsworn _pro se_ motion, alleged that the petitioner's counsel had previously represented the respondent in his capacity as president of the condominium association.  The appellate court reversed the trial court's granting of the motion to disqualify because it failed to follow proper procedure in determining the issue.  First, the trial court should have determined whether or not sufficient allegations had been made under oath or supported by affidavit to support the motion.  The trial court should have then allowed the opposing parties an opportunity to file affidavits in response.  Thereafter, the court noted, "if the affidavits filed by the parties did not agree on the issue presented the court should have conducted an evidentiary hearing." _Dawson v. Bram,_ 491 So.2d 1275, 1276.

Because the court did not require sworn testimony on the respondent's motion but rather told the attorney to disqualify himself, the appellate court concluded "the trial court departed from the essential requirements of the law in granting respondent's unsworn motion without first requiring proof of the allegations and then permitting the petitioners to present evidence if any, on their own behalf." Dawson, supra., 1276.

C. *Burden of Proof*. As indicated in the previous section, the trial court must first consider whether or not the movant's motion and accompanying affidavit alleged sufficient facts to determine that one party's counsel has acquired information which gives it an unfair advantage over the movant. "The purpose of the hearing is not to determine whether there has been a breach of the CPR but whether, because of such breach, one party has an unfair advantage on the other which can only be eliminated by removing the attorney." *Ford v. Piper Aircraft Corporation*, 436 So.2d 305, 307 308 (Fla. 5th DCA 1983).

In short, a party moving for the disqualification of an opposing party's counsel need not prove an actual violation of ethical considerations because "the professional responsibility of a lawyer goes further; it encompasses even the appearance of professional impropriety." *Andrews v. All State Insurance Company*, 366 So.2d 462, 463 (Fla. 4th DCA 1978). Andrews involved a wrongful death action against a driver of a station wagon and its owner along with the insurance carriers.

On the eve of trial one of the insurance carriers moved to disqualify the plaintiff's counsel on the grounds that said counsel had previously represented the owner of the trailer and its carrier and in that capacity had interviewed the driver and owner of the station wagon under circumstances in which the driver and owner of said vehicle thought that the law firm represented them. Plaintiff's counsel took statements from the driver and owner of the station wagon along with material portions of the vehicle for analysis.

Plaintiff's counsel contended he had never advised either one of the defendants that he represented them. Nevertheless, the court held such factual circumstances gave the appearance of conflict which justified disqualification of the plaintiff's counsel and stated "We recognize that it is a matter of no small consequence to require a lawyer to withdraw from a case, but with the climate

*Plaintiff's Memo, Templeton v. Fierro et. al. Case No. 00-7412 CIV - Gold, Page 15 of 19*

existing today vis-a-vis the Bar's image in the public eye, appearances should be more closely guarded than ever." Andrews, supra., 464.

The First District in *Bammac, Inc. v. Grady*, 500 So.2d 274 (Fla. lst DCA 1987) was presented with an issue similar to that decided in Andrews, supra. *Bammac* involved a workman's compensation case in which the claimants used a rehabilitative service owned by an attorney and his law firm. When the appellant ("E/C") denied the claimant authorized payment for services rendered by the claimant's rehabilitation service, the claimant sued E/C using the same attorneys who owned the rehabilitation service. E/C moved for the disqualification of the attorneys based on the fact that their relationship with the rejected service as well as their representation of the claimant in the action created an appearance of impropriety under the Florida Code of Professional Responsibility.

The First District Court of Appeals closely examined E/C's allegations as well as questioned whether it was necessary for the court to find a breach of a specific provision of the rule before condemning the practice complained of in the case at hand. The court held that the movant need not prove an actual violation of ethical conduct but that "the appearance of impropriety is sufficient." *Bammac*, supra, 278.

In *Bammac* there was no question that the claimant's rights had not been prejudiced. Similarly the competence and integrity of the attorneys was not questioned. But the issue presented created questions of prejudice of a different kind relating to an attorney's credibility being placed in issue by the use of their hired experts. Such an appearance of impropriety, in itself was sufficient to authorize disqualification of the attorney.

A party moving for the disqualification of an opposing party's attorney need not necessarily show actual prejudice in order to prevail in her motion. For example, in *Fitzpatrick v. Smith*, 432 So.2d 89 (Fla. 5th DCA 1983) the petitioner moved to disqualify the State Attorney's Office handling the

prosecution of charges pending against him because one of their attorneys, Greg Kimball, then in private practice, interviewed him in jail. Later Kimball was hired by the State Attorney's Office. Although Kimball was never actually retained by the petitioner, the trial court found that the petitioner and Kimball had confidential conversations covered under the Code of Professional Responsibility.

The petitioner did not allege the actual nature of the conversations nor shown actual prejudice, argued the State, and therefore could not prevail in his motion. The appellate court rejected the State's argument stating at page 90;

> **To require the defendant to come forward with allegations or proof that the attorney has or will disclose such confidences necessarily requires disclosure of much of the privileged information. This would destroy the very confidentiality he seeks to protect. We think it is sufficient to show they were confidential communications and they related to matters now on trial. Whether the attorney would violate those confidences and reveal the substance of them to other members of the office is not a subject of inquiry.**

The court ruled sufficient allegations had been raised to authorize the disqualification of the office of the State Attorney.

Finally, as seen in *Fitzpatrick v. Smith, supra*, (where the attorney was never retained) and *Dawson v. Bram, supra*, (where the attorney was a potential witness in another case) it does not matter whether or not the attorney a party seeks to disqualify was necessarily acting in an attorney/client relationship. The issue is whether or not one party has an unfair advantage over the other which can only be eliminated by removing the attorney. Here, due to the nature of the financial disclosures made by FIERRO in the implementation of the asset protection scheme, BECKER & POLIAKOFF have received financial information about DIANE which they can and are using in the instant lawsuit, which information would give FIERRO an unfair advantage. At

the least, an appearance of impropriety exists due to the conflicts between FIERRO and the

CONSULTING corporation's financial interests.

     iii. ***Motion for Order striking Purchase Election and Dissolving Corporations:***

    It's undisputed that the principals of the CORPORATIONS are deadlocked. While this

lawsuit continues, FIERRO is continuing the rape and pillage of the corporate assets as

evidenced by the attached plaintiff's affidavit.

F.S. §607.1430 in pertinent part provides:

> **A circuit court may dissolve a corporation or order such other remedy as provided in s. 607.1434: * * ***
> **\* \* \* (2) In a proceeding by a shareholder if it is established that:**
> > **(a) The directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the corporation is threatened or being suffered;  or**
> > **(b) The shareholders are deadlocked in voting power and have failed to elect successors to directors whose terms have expired or would have expired upon qualification of their successors;**
> **(3) In a proceeding by a shareholder or group of shareholders in a corporation having 35 or fewer shareholders if it is established that:**
> > **(a) The corporate assets are being misapplied or wasted, causing material injury to the corporation;  or**
> > **(b) The directors or those in control of the corporation have acted, are acting, or are reasonably expected to act in a manner that is illegal or fraudulent;**

It is undisputed fact that the shareholders of these corporations are deadlocked. There is also

ample evidence that FIERRO is misappropriating corporate funds as evidenced by DIANE's

affidavit. Defendants' have delayed the dissolution by filing an election to purchase. However,

the court may strike the election if made in bad faith. Plaintiff submits that in light of

Defendant's repeated failure to disclose and delaying tactics, the only purpose served in not

dissolving the corporations is to allow FIERRO to continue stealing from the corporations which

will result in a detrimental tax liability to DIANE and allow FIERRO to spirit a majority of the

assets away into her asset protection scheme. The plan is outrageous and simply illustrates how

attorneys can and will abuse the legal process in order to effect and implement a scheme to

defraud someone from their property. It is perfidy.

6. ***Conclusion:***

For the foregoing reasons, DIANE submits that her motions should be granted for the

grounds stated hereinabove.

### *CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a true and correct copy of the foregoing together with an attached affidavit was served by (x) mail, ( ) facsimile transmission and mail, ( ) process server, ( ) hand delivery to the following persons on the following date(s): Becker & Poliakoff P.A. P.O. Box 9057, Ft. Lauderdale, Fl. 33310-9057
Date of service: October 3, 2000.

Respectfully Submitted,
Andrew C. Barnard P.A.
9655 South Dixie Highway, Suite 108
Miami, Fl. 33156
(305) 665-0000
Fax: (305) 669-9606

By:_____
Andrew C. Barnard, Esquire

*Plaintiff's Memo, Templeton v. Fierro et. al. Case No. 00-7412 CIV - Gold, Page 19 of 19*